COX (MANNING v.). See Case No. 9,042.

## Case No. 3,304.

### COX v. MURRAY.

[1 Abb. Adm. 340.][1]

District Court, S. D. New York. Nov. Term, 1848.

ADMIRALTY JURISDICTION—BREACH OF EXECUTORY CONTRACT—SERVICE IN PORT.

1. A court of admiralty has no jurisdiction to afford a remedy, either in rem or in personam, for the breach of an executory contract for personal services to be rendered to a vessel in port, in lading or unlading her cargo.

[Cited in Cunningham v. Hall, Case No. 3,481; Scott v. The Ira Chaffee, 2 Fed. 407; Roberts v. The Windermere, Id. 725; The Minna, 11 Fed. 760; Diefenthal v. Hamburg-Amerikanische P. Actien-Gesellschaft, 46 Fed. 399; The Main, 51 Fed. 955.]

2. In order to clothe a contract with the privilege of a remedy in the admiralty courts, the subject-matter of the contract must be maritime in its nature. This is the case only when the matter done, or begun to be done under the contract, regards the fitment of the vessel herself for the voyage,—aid and assistance rendered on board her in prosecuting the voyage,—or the employment of her as the vehicle of a voyage.

[Cited in Paul v. The Ilex, Case No. 10,842; Hubbard v. Roach, 2 Fed. 395; The Canada, 7 Fed. 121; The Wivanhoe, 26 Fed. 928; Withcofsky v. Wier, 32 Fed. 301; The Gilbert Knapp, 37 Fed. 211; The Electron, 48 Fed. 690.]

This was a libel in personam, by Henry Cox against Richard Murray, to recover for services rendered by the libellant to the respondent.

The libellant was a stevedore. The respondent was master of the Gem, a British brig owned in Glasgow. The libel embraced several claims, among which was a demand of $60 for the breach of a contract alleged to have been made by the respondent with the libellant as stevedore, engaging the services of the latter to stow a cargo of corn on board the respondent's vessel for shipment abroad. It was shown, however, that all the demands stated in the libel were satisfied by the respondent, excepting the one for damages for non-performance of that contract; and that no services were rendered by the libellant under the contract to load the vessel, beyond what he had received compensation for. The sole question upon which the case turned was, whether a court of admiralty can take jurisdiction of a suit for damages for the bare breach of a contract for services to be rendered in loading a cargo on board a vessel.

Alanson Nash, for libellant.

J. T. Doyle, for respondent.

BETTS, District Judge. The libellant avers that he was employed by the respondent to load and stow on board the brig Industry, commanded by the latter, a cargo of corn; and that he was afterwards unjustly discharged by the respondent, and prevented from doing the work, whereby he has been damaged to the amount of $60. The respondent contests the amount of damages, and also objects to the jurisdiction of the court over the demand. The inquiry as to the extent of damages sustained will be laid out of view, and the question of jurisdiction will alone be considered.

This being a foreign vessel, the remedy would, ordinarily, be concurrent either in rem against her, or in personam against the owner or master, when the subject-matter is one of maritime jurisdiction. The General Smith, 4 Wheat. [17 U. S.] 438. If that position be not accurate universally,[2] I do not consider the form of action in this case affords the libellant any advantage in respect to the question under consideration.

The decision of the cause does not rest upon the point contested between the advocates of the parties on the hearing—that is, the right of a stevedore to sue in admiralty for services rendered by him in loading or unloading a vessel[3]—but upon a point widely different, viz., the competency of the court to sustain an action or afford a remedy for a mere breach of contract, when no services have been rendered, nor any materials furnished, nor other acts of performance done under it, upon a vessel.

I understand the doctrine of the liability in admiralty, of vessels or their owners to material-men and laborers, is based upon the consideration that the ship has been benefited and aided in her business of navigation by the supplies or services furnished her. 4 Wash. C. C. 453 [Zane v. The President, Case No. 18,201]. And I am not aware that maritime courts have ever sustained actions for personal services upon the footing of an executory contract merely. It may be a close question, whether a distinction may not exist, in respect to contracts of affreightment and others, which have relation to the use of a vessel in maritime employments, either by the owner or freighter, or to those entered into by mariners, which contemplate performance at sea, and thus assume, in most points, the strong similitude of a maritime character.

But a contract made in port, and intended to be there performed, to fit out, rig, or repair a ship, or to put on board necessary stores for a voyage, is not easily distinguishable in principle from the contract to furnish her a cargo; and I apprehend it would be difficult to fix upon any settled doctrine of maritime law which brings contracts of the latter description within the cognizance of maritime courts.

---

[1] [Reported by Benjamin Vaughan Abbott, Esq., and here reprinted by permission.]

[2] See the case of The Merchant [Case No. 9,434.]

[3] That the services of a stevedore are not the basis of a lien upon the vessel, suable in rem, was decided in this court, in The Amstel [Case No. 339], and in The Bark Joseph Cunard [Case No. 7,535].

If suits can be maintained in admiralty upon contracts where there has been no fulfilment, then, since the right of remedy should be reciprocal, the master or owner might resort to the same tribunal for the violation of agreements to build or repair a vessel, to supply her with stores, or to provide her with a stipulated cargo. The strong current of authority runs against the existence of any such powers in admiralty courts. Willard v. Dorr [Case No. 17,679]; Plummer v. Hill, 4 [Mass.] 380; Pritchard v. The Lady Horatia [Case No. 11,438]; The Orleans v. Phoebus, 11 Pet. [36 U. S.] 175; Andrews v. Wall, 3 How. [44 U. S.] 568; L'Arina v. Manwaring [Case No. 8,089]; Bains v. The James and Catherine [Case No. 756]; The Crusader [Id. 3,456]; Bracket v. The Hercules [Id. 1,762]; Davis v. A New Brig [Id. 3,643]; Thackarey v. The Farmer [Id. 13,852]. Undertakings which are merely personal in their character, or which are preliminary and leading to maritime contracts, do not seem ever to have been recognized as within the jurisdiction of admiralty. Bracket v. The Hercules [supra]; The Tribune [Case No. 14,171]. The subject-matter of the contract—the substantial object and end—must pertain to navigation, or be connected with transactions performed by vessels on the sea, to become maritime in its nature, and be clothed with the privilege of a remedy in admiralty courts; and it appears to me that an agreement acquires this maritime quality only when the matters performed or entered upon under it pertain to the fitment of a vessel for navigation, aid and relief supplied her in preparing for and conducting a voyage, or the freighting or employment of her as the instrument of a voyage. Collateral contracts with or assistance by services or advances to an owner or master, incidentally benefiting a voyage, acquire no special property thereby which renders them maritime.

The loading or stowing a cargo on board does not involve either of these fundamental ingredients of maritime service. This position was taken in the decision rendered in this court in the case of The Amstel, decided in 1831 (since reported [Case No. 339]). The services of a stevedore in stowing or unlading a cargo, were there placed upon the same footing with those of a drayman who hauls it to the vessel or away from her. The stevedore's service is of no higher character, in respect to maritime privilege, than that rendered by any shore laborer who assists in pulling at the falls, or moving the merchandise along the wharf while the vessel is taking in or discharging cargo, or who aids in weighing or measuring it. The engagement entered into by a master with a stevedore, to employ the latter in such service, is of no higher quality than the service itself, and cannot, therefore, afford foundation for an action in admiralty, either in rem or in personam. I therefore pronounce against the jurisdiction of the court over this demand.

Decree accordingly.